**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**---------------------------------------------------------x**
**TAMARA EDWARDS,**

|  |  |
|---|---|
| **Plaintiff,** | **OPINION AND ORDER** |
| **- against -** | **03 CV 2947 (NG) (RML)** |

**GREAT NORTHERN INSURANCE**
**COMPANY,**

**Defendant.**
**---------------------------------------------------------x**

**GERSHON, United States District Judge:**

This action arises out of a claim for coverage under an automobile insurance policy.

Plaintiff Edwards seeks a remand of the action to the state court from which it was removed by

Great Northern Insurance Company ("Great Northern").  Great Northern  moves for partial

summary judgment on Edwards' claims for defamation, intentional and negligent infliction of

emotional distress and bad faith breach of contract, as well as on plaintiff's demands for

consequential and punitive damages and attorneys' fees.  For the reasons set forth below,

plaintiff's motion for remand is denied, and Great Northern's motion is granted in its entirety.

**MOTION TO REMAND**

The complaint on its face seeks more than the $75,000 minimum required for diversity

jurisdiction.  See 28 U.S.C. § 1332(a).  The motion to remand is denied.

**MOTION FOR SUMMARY JUDGMENT**

Unless otherwise noted, the following facts are not in dispute.

## FACTS

*The Accident and its Immediate Aftermath*

On April 21, 2002 around 6:00 p.m., the automobile of Edwards, which was insured by Great Northern, and an automobile driven by Jeanette Tejada collided at the intersection of Powell Street and Riverdale Avenue in Brooklyn, New York. The two-car collision involved six passengers. In addition to Edwards, there were three passengers in Edwards' car, a 2001 Nissan Altima: (1) Edwards' then-fiancé, now-husband Orvin Brown; (2) Violet Whittaker; and (3) Whittaker's infant son. Tejada's car was a 1995 Nissan Sentra, in which  Tejeda's young daughter was also riding.

Edwards claims that she was almost through the intersection when Tejeda ran a stop sign and hit the front passenger side of her  vehicle and that she was unable to open the driver's side door because of the impact. Police arrived and filled out an accident report.  Whittaker and her infant son left the accident scene in an ambulance. Although they were examined at the hospital, neither was injured and neither was treated. At the time of the collision, Edwards complained of pain in her neck, wrist, and knee. Edwards was examined by a paramedic at the scene, who bandaged her wrist. Neither Edwards nor Brown went to the hospital that day. In May of 2002, Edwards sought medical treatment at St. Mary's Hospital for a miscarriage that she claims was caused by the collision. Tejeda was not injured in the accident.  Although Tejeda's daughter was taken to the emergency room for an examination the next day, she was "just sore" and not seriously injured.

On April 22, 2002, Edwards, Brown and Whittaker went to to Fulton Medical, P.C.  All three were treated by Dr. Michael Pevzner.  At his deposition, Dr. Pevzner asserted his Fifth Amendment privilege against self incrimination in response to all questions regarding the examination and treatment of Edwards, Brown, and Whittaker.  On February 5, 2003, Great Northern received notice from another insurance company that most insurance companies had stopped making payments to Fulton Medical and Dr. Pevzner.[1]

On April 22, 2002, Edwards called Great Northern to report the accident.  The insurance company took recorded statements over the telephone from Edwards and Brown.  Edwards stated that Tejeda ran a stop sign at 85 miles per hour.  Edwards claimed that there were no witnesses on the scene.   Brown stated that he was visiting from Jamaica for three months.  Brown also stated that, after Edwards stopped at the stop sign, they were struck by a car going 85 miles per hour.  Both Edwards and Brown rated the collision as a 7.5 on a scale of one to ten.

On April 23, 2002, Tejada also gave a statement by telephone to Great Northern.  Tejeda claimed that it was Edwards who ran the stop sign.  Tejeda stated that she was going 20 to 25 miles per hour because the road was wet from rain earlier in the day.  Tejeda claimed that it was Edwards who struck her after Tejeda had already entered the intersection.  Tejeda claimed that Edwards was verbally abusive and threatened physical harm to her and her child.  Tejeda also stated that tow truck operators arrived at the scene prior to the police, as well as unknown individuals who solicited business for attorneys.  Tejeda noted that none of the passengers in Edwards' car appeared to be injured until the ambulance arrived at which time "they started

---

[1] Defendant denied no fault claims submitted by Fulton Medical and Dr. Pevzner on the ground that the purported treatment was not medically necessary and that Fulton Medical was operating as an unlicensed medical provider.  Defendant's denial of the no fault claims was upheld by an arbitration panel.

3

acting like they were injured."

*The Insurance Policy*

Edwards' insurance policy went into effect for one year as of April 12, 2002 and provided comprehensive and collision liability coverage for Edwards' 2001 Nissan Altima. The policy provided for liability coverage not exceeding $300,000. On May 14, 2002, Edwards paid a premium of $438.35. The policy contains several pertinent provisions. First, Great Northern agreed to insure Edwards for any property damage to her car and for direct loss or expense arising or resulting from claims against her for damages by reason of ownership, maintenance, and operation of the car. If the loss were found to be the result of an intentional act, the consequences of which were foreseeable to a reasonable person, the loss would be excluded from coverage. In addition, the policy contained agreements reserving Great Northern's right to investigate collisions to determine whether they are excluded from coverage under the policy. The policy does not provide coverage if an insured has intentionally concealed or misrepresented any material fact relating to the policy before or after the loss. Finally, Great Northern agreed to provide and to pay for a rental car for Edwards while her car was being repaired.

*The Damaged Car*

Edwards took her car to Gill's Auto Body Shop for repair, where the estimated damages totaled $7,297.04. Great Northern's appraiser approved the estimate, and the shop performed the repairs. Although Great Northern initially paid for some of the replacement rental car expenses through May 1, 2006, Edwards later incurred car rental and other transportation expenses for

which Great Northern has refused to reimburse her.  After the shop completed the repairs to the car, Great Northern refused to pay.

As a result of Great Northern's refusal to pay for the cost of repairs, the auto body shop placed a lien on the car and served Edwards with a Notice of Lien and Sale indicating that the car would be sold if payment were not received by a certain date.  On June 28, 2002, Edwards notified Great Northern of this.  On July 13, 2002, her attorney wrote a letter informing Great Northern that it was in violation of the contract and urging the insurance company to fulfill its obligations.  Because of its pending investigation, discussed below, Great Northern refused to make any payments on the policy.  The shop sold the car to satisfy the lien.

Even though she no longer had use of her car, Edwards remained obligated to make payments on her car note.  From May 2002 to August 2003, Edwards incurred alternative transportation expenses. She asserts that, because of these unanticipated expenses, she was unable to continue making payments on her car note with Nissan, which has adversely affected her credit rating.  In August 2003, Edwards purchased a used car in her husband's name. Edwards paid $11,099.62 total, putting $6,495.40 down and financing the remainder.


*The Investigation*

On April 24, 2002, Great Northern referred the claim to its Special Investigations Unit ("SIU") and assigned Gregory Dunton to conduct the investigation.  The claim was initially referred to the SIU: (1) because of differences between Tejeda's and Edwards' descriptions of the collision; (2) because of striking similarities between Brown's and Edwards' descriptions; and (3) because Great Northern concluded that Edwards had exaggerated her medical claims

5

when she claimed she required three weeks off work for a sprained wrist. By April 25, 2002, Dunton had concluded that there appeared to be connections between Edwards and an insurance fraud ring operating in the New York area that was led by Julian Brown and known as "the Brown Ring." Dunton discovered in a separate investigation of an accident associated with the Brown Ring that Paula Grant, whom Edwards reported she was going to visit at the time of the collision, was also known as Paula Johnson and had participated in an accident staged by the Brown Ring. Whittaker, during her examination under oath, revealed that she had called Paula Grant to remind herself of the date of the collision.

## PROCEDURAL HISTORY

On April 18, 2003, Edwards filed a complaint against Great Northern in the Supreme Court of the State of New York, County of Queens, claiming $8,900,000 in compensatory, consequential, and punitive damages. On June 13, 2003, Great Northern removed the action to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1441(a). At that time, Edwards did not move for remand to state court; rather, she filed an amended complaint on October 29, 2003, in the district court, in which she increased the amount of damages claimed to $13,435,750.

The amended complaint asserts nine claims. The Fourth, which claims a failure to defend, and the Ninth, for unspecified insurance law violations, were dismissed with prejudice on consent.[2]

---

[2] Tejada, Brown, and Whittaker filed personal injury actions against Edwards for injuries allegedly sustained in the collision. Since Great Northern had not yet made a determination regarding its coverage defenses, Great Northern was obligated to, and did, defend Edwards against the actions.

Great Northern seeks partial summary judgment on five of Edwards' seven remaining

claims. Great Northern does not challenge the contract-based First and Second claims. Thus, it

seeks dismissal of the Third claim (consequential damage to credit rating), the Fifth (intentional

infliction of emotional distress), the Sixth (negligent infliction of emotional distress), the

Seventh (defamation), and the Eighth (bad faith breach). Great Northern also seeks summary

judgment on plaintiff's demands for attorney's fees, consequential damages, and punitive

damages.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case and on which that

party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In defending against a motion for summary judgment, the non-moving party may not rely on

mere allegations, but rather must come forward with "specific facts showing that there is a

genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 249; *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The substantive law will

identify which facts are material and only those facts that might affect the outcome of a suit will

preclude summary judgment.  *Anderson*, 477 U.S. at 248.  A dispute regarding a material fact is

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson*, 477 U.S. at 248.  A complete failure of proof concerning an essential element

of the non-moving party's case necessarily renders all other facts immaterial, and entitles the

moving party to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.  On summary

judgment, the court must resolve all ambiguities and draw all reasonable inferences "in the light

most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.


## DISCUSSION

### Choice of Law

It is undisputed that New York law governs this action.


### Defamation Claim

Edwards claims that Great Northern defamed her by accusing her of insurance fraud and

by publishing these accusations in front of witnesses during its investigation of the accident.

Great Northern contends that the defamation claim must be dismissed because: (1)

Edwards has failed to plead any defamatory statements with sufficient specificity; and (2) Great

Northern's statements made during its investigation are protected by both absolute and qualified

privileges.

In federal court, the Federal Rules of Civil Procedure govern the pleading requirements

for defamation claims. Rule 8 requires allegations of defamation that are "simple, concise, and direct," Fed. R. Civ. P. 8(e)(1), allowing the defendant sufficient notice of the communications complained of to enable the defendant to defend itself. *See Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986). To fulfill this federal standard, the plaintiff must specify: (1) who made the statements; (2) when they were made; (3) in what context; (4) whether they were made to a third party; and (5) whether they were written or oral. *Deutsche Asset Mgmt., Inc. v. Callaghan*, 2004 WL 758303, *12 (S.D.N.Y. April 7, 2004). In her complaint, Edwards specifies neither the actual defamatory words, who said them, when they were said, whether the statements were written or oral, nor whether the statements were received by any particular third party. The complaint is therefore deficient. *See Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 762 (2d Cir. 1990) (dismissing defamation complaint because plaintiff failed to plead publication, damages, or the words actually spoken); *Wanamaker v. Columbian Rope Co.*, 713 F. Supp. 533, 545 (S.D.N.Y. 1989) (dismissing defamation claim because plaintiff did not specify who made the statements, when they were made, in what context, whether they were written or oral, and whether they were published to a third party), aff'd, 108 F.3d 462 (2d Cir. 1997); *Bond v. Board of Educ.*, 1999 WL 151702 at *5 (E.D.N.Y. March 17, 1999) ("Failure to specify the allegedly defamatory language warrants dismissal.").

Edwards asserts that the complaint's lack of specificity is remedied in her answers to interrogatories; however, these responses also contain an insufficient amount of information. Although Edwards states the general nature of the words and who heard them, she still does not specify when or in what context the statements were made, whether the statements were written or oral, or the alleged defamatory words themselves. Moreover, Edwards' responses to the

interrogatories are "on information and belief." *See Baker v. Latham Sparrowbush Assocs.*, 72

F.3d 246, 255 (2d Cir. 1995) (allegations made solely upon information and belief are not

considered on a motion for summary judgment). At a January 20, 2005 deposition, Edwards

could identify the person making the allegedly defamatory remarks only as "a Chubb

representative."[3] She could not specify the date of the remarks. Edwards stated only that the

remarks were, "that we're committing fraud and we're going to be persecuted [sic] in federal

court." Thus, Edwards has not only failed to plead her defamation claim with sufficient

specificity, she has also failed to develop the record in pre-trial proceedings.

        Therefore, Great Northern's motion for summary judgment is granted as to the Seventh

claim.


**Intentional and Negligent Infliction of Emotional Distress**

        As Fifth and Sixth Claims, Edwards asserts that Great Northern intentionally and

negligently inflicted emotional distress by (1) failing, refusing and/or neglecting to perform its

obligations under the insurance policy, (2) threatening her with prosecution by State and Federal

authorities, and (3) defaming Edwards with false accusations of insurance fraud.

        To state a claim for the intentional infliction of emotional distress in New York, a

plaintiff must plead four elements: (1) extreme and outrageous conduct; (2) intent to cause, or

disregard of a substantial probability of causing, severe emotional distress; (3) a causal

connection between the conduct and injury; and (4) severe emotional distress. *Harary v. Allstate*

---

[3] On April 18, 2003, plaintiff filed a complaint in state court naming as defendant Chubb Group of
Insurance Companies. On October 29, 2003, plaintiff filed an amended complaint in federal court naming Great
Northern as defendant, rather than Chubb Group.

*Ins. Co.*, 983 F. Supp. 95, 100 (E.D.N.Y. 1997). The claim must be supported by proof of conduct by Great Northern "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting RESTATEMENT [SECOND] OF TORTS § 46 cmt. d (1965)). The conduct required to sustain a claim for intentional infliction of emotional distress "must also be intentionally directed at the plaintiff and lack any reasonable justification," *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (quoting *Fischer v. Maloney*, 43 N.Y.2d. 553, 558 (1978)).

New York courts have consistently dismissed claims for intentional infliction of emotional distress based on an insurer's failure to pay insurance benefits. In *Harary*, the court held that refusal to pay a claim "prior to completing the investigation is not outrageous conduct." In the present case, although Edwards filed suit one full year after the collision, she filed before Great Northern had completed its investigation. *See Burlew v. American Mutual Ins. Co.*, 63 N.Y.2d. 412, 417-18 (1984).

Regarding threat of prosecution as a ground for intentional infliction of emotional distress, Edwards relies on *Vasarhelyi v. New Sch. for Soc. Research*, 230 A.D.2d 658 (1st Dep't 1996), and *Kaminski v. United Parcel Service*, 120 A.D.2d 409, 412 (1st Dep't 1986). However, the conduct of Great Northern in the present case does not rise to the level of the conduct of the defendants in *Vasarhelyi* and *Kaminski*. In *Vasarhelyi*, the threat of prosecution was accompanied by abusive interrogation, denial of a request to have another employee present during the interrogation, the engagement of criminal attorneys to conduct the interrogation, and probing questions into the plaintiff's honesty and chastity. *Vasarhelyi*, 230 A.D.2d at 659-60. In

11

*Kaminski*, the threat of prosecution was likewise coupled with abusive interrogation including "loud, aggressive, profane and obscene language and gestures" while defendants blocked plaintiff's exit. *Kaminski*, 120 A.D.2d at 410-11. No such circumstances accompanied either Edwards' examination under oath or Great Northern's warnings of possible prosecution. Similarly, the false police report forming the bases for a claim of intentional infliction of emotional distress in *Levine v. Gurney*, 149 A.D.2d 473 (2d Dep't 1989), cannot be compared to the report submitted to NYSID here which simply set forth defendant's bases for its suspicions. *See Mohamed v. Marriott Int'l Inc.*, 905 F. Supp. 141, 147, 157-58 (S.D.N.Y. 1995) (accusing plaintiff of stealing to pay for debt on credit card not so outrageous as to exceed the bounds of decency where there was no evidence of intent to falsely accuse).

In sum, the undisputed facts establish that Great Northern has merely conducted an investigation into allegedly suspicious circumstances to determine its obligations under the policy.

Finally, defamation cannot be a basis for plaintiff's intentional infliction of emotional distress claim because her defamation claim is dismissed for insufficient pleading, and a plaintiff cannot sidestep the stringent prerequisites of a defamation claim by disguising such claim as another tort. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988); *Bass v. Hendrix*, 931 F.Supp. 523, 530 (D. Tex. 1996).

Edwards also fails to allege conduct by Great Northern sufficient to sustain a claim of negligent infliction of emotional distress. The same elements are generally applicable to negligent as to intentional infliction of emotional distress. *Sheila C. v. Povich*, 768 N.Y.S.2d 571 (Sup. Ct. N.Y. County 2003) (citing *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985)).

12

However, a negligent infliction of emotional stress claim must also be premised upon a breach of a duty owed to Edwards "which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety." *Sheila C. v. Povich*, 11 A.D.3d 120, 130 (1st Dep't 2004). *See Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). Plainly, no such duty exists here regarding plaintiff's physical safety.

Alternatively, Edwards may sustain a claim for negligent infliction of emotional distress in New York where there is "an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious." *Johnson v. State*, 37 N.Y.2d 378 (1975). In *Johnson*, the Court of Appeals notes two such "special circumstances": (1) negligent mishandling of a corpse; (2) negligent transmission by a telegraph company of a message announcing death. *Id.* at 382. Great Northern's conduct does not rise to the level of the "special circumstances" noted in *Johnson*.

Edwards' reliance on *Dana v. Oak Park Marina*, 230 A.D.2d 204 (4th Dep't 1997), is also misplaced. In *Dana*, the defendant employer installed cameras in its employee restrooms. *Id* at 206. In finding that the plaintiff could recover for negligent infliction of emotional distress without physical harm or fear, the *Dana* court imposed liability on the ground that defendant "owed a *statutory* duty" directly to the plaintiff. *Id.* at 208 (emphasis added). In the present case, Great Northern does not owe Edwards any statutory duty; the relationship between Edwards and Great Northern is contractual.

Therefore, Great Northern's Fifth and Sixth claims for intentional and negligent infliction of emotional distress are dismissed.

**Bad Faith**

Edwards alleges as an Eighth Claim that Great Northern has shown bad faith toward its contractual obligations by failing and refusing to abide by the terms and conditions of its contract with Edwards.

New York does not recognize an independent claim for "bad faith denial of insurance coverage, whether based in tort or in contract." *Continental Info. Sys. Corp. v. Federal Ins. Co.*, 2003 WL 145561, at *3 (S.D.N.Y. Jan. 17, 2003); *New York University v. Continental Ins. Co.*, 87 N.Y.2d 308 (1995); *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603 (1994). A contract claim for alleged breach of the implied covenant of good faith and fair dealing is "duplicative" of a claim for breach of contract and should be dismissed. *New York University v. Continental Ins. Co.*, 87 N.Y.2d at 320 (1995). *See Manning v. Utilities Mut. Ins. Co.*, 2004 WL 325256 at *12 n.2. Parties to an express contract are bound by an implied duty of good faith; however, the "breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale Del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992). Accordingly, this claim is dismissed.

**Consequential Damages: Injury to Plaintiff's Credit Rating**

Defendant seeks dismissal of plaintiff's demand for consequential damages allegedly arising from damage to her credit rating as the result of her inability to pay her car note which, in turn, arose from the defendant's failure to pay on its policy. To begin with, plaintiff has not identified any basis for calculating any actual damages to her from the alleged injury to her credit rating. For that reason alone, defendant is entitled to summary judgment.

14

In addition, plaintiff's allegations fail to establish that the car insurance policy at issue

here contemplated consequential damages of the type she alleges. On the undisputed facts, there

is no basis for concluding that the parties contemplated that, were the defendant not to pay on the

policy, it would become liable for such damages. *See Continental Information Systems Corp. v.*

*T1Xpert Corp.*, 2003 WL 145561 (S.D.N.Y. January 17, 2003). *Kenford Co. v. County of Erie*,

73 N.Y. 2d 312 (1989), upon which plaintiff relies, is not to the contrary. There, the New York

Court of Appeals set forth the general rules for the availability of consequential damages in

breach of contract actions and denied such damages as a matter of law where the plaintiff

claimed lost appreciation in the value of its lands caused by the County's breach of the parties'

contract. The Court held that consequential damages, that is, damages beyond those that flow

naturally and directly from the breach, are available only where "such unusual or extraordinary

damages [have] been brought within the contemplation of the parties as the probable result of a

breach at the time of or prior to contracting." *Id.* at 319 (*quoting Chapman v. Fargo*, 223 N.Y.

32 (N.Y. 1918)(quotations omitted)). The Court found that there was no provision in the

contract, and no evidence in the record, to demonstrate that the County was undertaking a

contractual responsibility for such losses, despite its knowledge of plaintiff's purposes in

entering into the contract.

Thus, even applying this general contractual rule, and not a more strict rule for insurance

contracts, plaintiff cannot succeed. In *Kenford* the Court stated that "In determining the

reasonable contemplation of the parties, the nature, purpose and particular circumstances of the

contract known by the parties should be considered . . . as well as what liability the defendant

fairly may be supposed to have assumed consciously, or to have warranted the plaintiff

reasonably to suppose that it assumed, when the contract was made." 73 N.Y.2d at 319 (internal

quotations omitted). Here, the nature, purpose and circumstances of this car insurance contract

cannot be said to give rise to the remote consequential damages that plaintiff claims.


**Attorney's Fees**

Edwards is not entitled to attorney's fees. *New York University,* 87 N.Y.2d at 323 ("an

insured may not recover the expenses incurred in bringing an affirmative action against an

insurer to settle its rights under the policy"). With two limited and inapplicable exceptions, "an

insured has no right to recover counsel fees in connection with an action alleging a breach of

contract." *Cunningham v. Security Mut. Ins. Co.*, 260 A.D.2d 983, 985 (3d Dep't 1999). The

first exception, not applicable here, arises where the insured prevails in a declaratory judgment

action brought by an insurance company. *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47

N.Y.2d 12 (1979); *Charter Oak Fire Ins. Co. v. Trustees of Columbia University*, 198 A.D.2d

134, 135 (1ˢᵗ Dep't 1993). The second exception arises when the insurer has conducted itself in

bad faith. *Sukup v. State*, 19 N.Y.2d 519, 522 (1967). The *Sukup* court found the legal fees of

one party chargeable to the other only upon an "extraordinary showing." *Id*. Absent such a

showing, the insured cannot recover her legal expenses even though the insurer loses the

controversy and is held responsible for the loss. *Mighty Midgets, Inc.*, 47 N.Y.2d at 21; *Sukup*,

19 N.Y.2d at 522. The presumption against bad faith liability can be rebutted only by evidence

establishing that the insurer's refusal to perform its obligations was not only based on "more

than an arguable difference of opinion," but also exhibited "a gross disregard for its policy

obligations." *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 625 (2d Cir. 2001)

16

(quoting *Sukup*, 19 N.Y.2d at 522). In *Hugo Boss*, the Second Circuit held that, where the evidence was insufficient to establish that the insurer unreasonably refused to perform its contractual duties, the policy holder failed to overcome the presumption against a finding of bad faith. *Hugo Boss Fashions, Inc.*, 252 F.3d at 625. In the present case, the policy expressly entitled Great Northern to investigate the allegedly suspicious circumstances of Edwards' claim, which it did. In addition, there is no evidence that Great Northern exhibited a "gross disregard for its policy obligations" amounting to bad faith, as Great Northern was uncertain as to its obligations at the time it declined to perform. Thus, since the record "shows merely an arguable case in which defendant may be held wrong," Edwards has not adduced sufficient evidence to overcome the presumption and "impose a liability beyond the terms of the contract." *Sukup*, 19 N.Y.2d at 522. Since the tort-based claims are dismissed, Edwards cannot recover attorney's fees for those claims either. Great Northern's motion is granted as to all demands for attorney's fees.

**Punitive Damages**

Edwards seeks to recover punitive damages with regard to both her contract and tort claims. Under New York law, punitive damages are available only under limited circumstances and "may not be awarded in breach of contract cases, which involve a private wrong and where no public rights are involved." *Durham Indus., Inc. v. North River Ins. Co.*, 673 F.2d 37, 41 (2d Cir. 1982). Where the claim arises from a breach of contract there are four required elements to state a claim for punitive damages: (1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must demonstrate "a fraud evincing a high degree of moral

17

turpitude" or "such wanton dishonesty as to imply criminal indifference to civil obligations;" (3)

the conduct must be directed at plaintiff; and (4) the conduct must be part of a pattern directed at

the public generally. *New York University*, 87 N.Y.2d at 316; *see Rocanova,* 83 N.Y.2d 603 at

613. Where an action arises out of contract, "the threshold task for a court considering a

defendant's motion to dismiss a cause of action for punitive damages is to identify a tort

independent of the contract." *New York University*, 87 N.Y.2d at 316. Where a party is merely

seeking to enforce its bargain, a tort claim will not lie. *Sommer v. Federal Signal Corp.*, 79

N.Y.2d 540 (1992). Since the policy defines a covered collision as "any direct and accidental

loss by collision with another object," and excludes coverage when the insured intentionally

causes a loss, Great Northern was merely seeking to enforce its bargain by investigating its

obligation to pay. Edwards fails to show that Great Northern's conduct was fraudulent or

evinced criminal indifference to civil obligations. Further, Edwards has not established that

Great Northern's conduct was part of a pattern of similar conduct directed at the public

generally. *See Rocanova,* 83 N.Y.2d at 613; *Fulton v. Allstate Ins. Co.*, 14 A.D.3d 380, 381 (1st

Dep't 2005); *Cf., Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F.Supp.732, 739 (S.D.N.Y.

1990) (finding that the use of an unfair and inefficient claim settlement policy was designed to

deceive categories of policyholders and thus the public at large). This case is simply a private

breach of contract dispute between the insurer and its insured without greater implication. Thus,

Edwards is not entitled to punitive damages on its  contract claims. Since all of Edwards' tort

claims are dismissed, the motion to dismiss all requests for punitive damages is granted.

## CONCLUSION

For the reasons stated above, plaintiff's motion for remand is denied, and Great

Northern's motion is granted in its entirety.

SO ORDERED.

*/s/ Nina Gershon*

**NINA GERSHON**
**United States District Judge**

**Dated:**          **July 18, 2006**
                    **Brooklyn, New York**